THOMSON–HOUSTON ELECTRIC CO. v. RAHWAY ELECTRIC LIGHT & POWER CO.

(Circuit Court, D. New Jersey. July 7, 1899.)

1. PATENTS—ANTICIPATION—BUFFER SPRING FOR TROLLEY ARM.
  A patent for a buffer spring so constructed as to come into operation when the upwardly pressed trolley arm of an electric railway car has assumed a vertical position, and, by engaging therewith, prevent damage being done to the trolley, or by it to the car on which it is placed, was anticipated by the prior use of similar springs as recoil buffers to receive the shock of the projector arm in devices for throwing glass balls as targets.

2. SAME.
  The Baker patent, No. 437,961, for an improvement in trolley devices for electric railways, was anticipated by the Holden patent, No. 244,897, and the Bloom patent, No. 313,804, covering analogous devices in traps for throwing glass balls, and also by the Van Depoele patent, No. 405,750, for an improvement in trolley devices.

L. F. H. Betts and Frederic H. Betts, for complainant.
R. C. Mitchell and Charles E. Mitchell, for defendant.

KIRKPATRICK, District Judge. It appears from the bill of complaint in this cause that Isaac F. Baker, having assigned to the complainant, the Thomson-Houston Electric Company, his entire right, title, and interest in and to an application for letters patent, and the inventions and improvements described therein, the patent office of the United States afterwards, and on October 7, 1890, granted to the Thomson-Houston Electric Company letters patent No. 437,-961. The object of the invention, as set out in the specification of said patent, is to secure strength and compactness, as well as simplicity and durability, in devices employed in connection with electrically propelled railway cars. It also relates to "means for preventing damage to the trolley arm in case the trolley should slip off the wire or conductor." The particular difficulties which had been experienced in the operation of ordinary constructions, and which

Baker sought to obviate by his combination, are set out in the patent as follows:

"In ordinary constructions, if the trolley or contact should slip off the wire or conductor, the trolley arm or bar would be thrown violently forward by the spring which produces the pressure, and the bar or arm, by striking the roof of the car, would be apt to be broken, or to damage the car. I obviate this difficulty by providing a spring safety stop which shall take up the shock of the blow produced by the moving arm or bar when it has moved forward a certain distance after escaping from the wire. Such a spring safety stop may be formed by a stiff blade spring, C, fixed to the support, S, and arranged to be engaged by some part moving with the trolley arm; as, for instance, a cross rod, E, connecting the sector. The blade spring is located as shown so that it will be engaged by the cross rod by the time that the rod assumes a vertical position, and before it can have acquired any great momentum under the action of the pressure spring. Another form of spring is also provided for, which is described as a spiral extensible spring and connects with the bar, B, by a loose, flexible cord or chain which is given sufficient slack not to interfere with the ordinary movement of the arm, B. Should the trolley wheel slip off the wire, this slack is taken up, and the spring, C, acts as a stop to destroy the shock of the blow which would otherwise be produced."

Fig. 1.

The claims of the patent which the defendant's device is said to infringe are set out as follows:

Claim 1: "The combination with a pivoted electric trolley or contact arm and the spring intended to swing the outer end of the arm toward the electric wire or conductor of a buffer spring, C, mounted on the standard or support for said pivoted arm, and arranged as described, to be struck by a part attached to the arm at or about the time said arm assumes a vertical position."

Claim 4: "The combination with the pivoted trolley arm and the spring tending to swing the outer end of the arm toward the line conductor of a spring safety stop arranged to be engaged by parts connected to the arm for checking the movement of the arm above the line conductor."

The complainant's expert testifies that the blade spring and the spiral extensible spring of the Baker patent are mechanical equivalents, and it is obvious that the purpose of both is but to arrest the forward movement of the trolley bar after it leaves the wire or con-

ductor, and so prevent it from injuring the top of the car by coming in forcible contact therewith, or itself being broken by the same means. It has been suggested by the complainant's expert that the invention had the additional purpose of preserving from injury the span wires which hold the conductor in place, and preventing damage to them by the trolley pole forced upward by the pressure spring. I find, however, no warrant for this suggestion in the patent. Span wires are not shown in the drawings, nor are they anywhere mentioned in the specifications, nor are the buffer springs brought into action until after the trolley pole has passed the span wires, and assumed a vertical position. The object of affording protection to the span wires must, I think, be eliminated from consideration. With a due regard to the right of the patentee to obtain the full benefit of his invention, it must be limited to what has been expressed in the claims, specifications, and drawings, and care be taken lest we be led into the error of reading into the patent purposes which it does not include, and attribute to it advantages which, on its face, nowhere appear, and which were not in the contemplation of the inventor. The complainant's device must be limited to an ordinary trolley with an ordinary buffer spring so constructed as to come into operation when the trolley has assumed a vertical position, and, by engaging therewith, prevent damage being done to the trolley, or by it to that car upon which it is placed. The upwardly pressed trolley arm was old, as was the buffer spring, and their combination produced no electrical effect, and added nothing to the art of operating electric railways. An examination of the record shows that prior to the date of the application for the Baker patent similar or equivalent means had been employed to accomplish similar results. The Holden patent, No. 244,897, July 25, 1881, is a device for throwing glass balls, in which a projector arm is thrown upward by a spring, and a recoil buffer is used to receive the shock, and by means of its compression to relieve the strain on the mechanism when it is stopped, and render it less liable to become broken or disabled in use. Acting upon the same principle, and for the same purpose, a recoil spring was used in the Bloom patent, No. 313,804, March 10, 1885, where a pivoted throwing lever is checked by its impact with a concentric spring, and gradually brought to a full stop, and gently returned to a position of rest. The expressed object here is to prevent breakage of the projector and mechanism with which it is connected. In my opinion, the complainant's device was but the application to the trolley of the well-known principles embodied in the patents above mentioned, and for the like purpose of protecting it from injury. It is objected that the patent in suit relates to a different art, but, as has been said, the invention in no way produced an electrical effect, or could strictly be said to relate to the advancement of the electrical art. It is apparent that the difficulties encountered and to be overcome were the same. It was not a new use to which the principle of the buffer was to be adapted, but an old one. It was immaterial whether the intention was to prevent damage to or by an upwardly spring-actuated trolley pole or a projector of glass balls. It did not require invention to apply

similar means to accomplish the same result. If more were needed to show anticipation of the complainant's device, it would be found in the Van Depoele patent, No. 405,750, dated June 25, 1889, in which the trolley arm is pivoted at one end, and is equipped with two oppositely acting tension springs by which it is pressed upwardly against the trolley wire. While the trolley is under the pressure of the upwardly actuating spring, a similar spring upon the opposite side is inactive, and idle, but adapted to be brought into action when the trolley leaves the conductor, and reaches a vertical position. It will then operate as a buffer spring, and tend to bring the trolley at rest, and prevent injury to the trolley and the car. These springs in the Van Depoele patent perform the functions and are the equivalents of those described in complainant's patent, and, in my opinion, are a complete anticipation of claim 4 of the patent in suit. The testimony of complainant's expert tends to show that the devices of the Van Depoele patent mentioned would overcome all the difficulties which, as I have stated above, the Baker patent was intended to remedy. Other patents have been cited to the court as anticipating that of complainants, but I do not deem it necessary to refer to them in detail. The foregoing are, in my opinion, sufficient to warrant a dismissal of the bill on the ground of want of patentable novelty. Let a decree be prepared.